# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. O'Neill,                      :
                          Petitioner    :
                                        :
              v.                        :   No. 1359 C.D. 2019
                                        :   Argued:  September 17, 2020
State Employees' Retirement System,     :
                          Respondent    :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                  **FILED:  October 19, 2020**


Joseph J. O'Neill (Petitioner), a former judge on the Municipal Court of Philadelphia County (municipal court), petitions for review of the September 3, 2019 Opinion and Order of the State Employees' Retirement System (SERS) Board, which denied Petitioner's appeal from a determination of SERS that pursuant to the Public Employee Pension Forfeiture Act,[1] commonly referred to as Act 140, Petitioner forfeited his pension benefit when he pled guilty to two counts of the same federal crime.  On appeal, Petitioner argues that the Board erred in concluding that the federal crime to which Petitioner pled guilty is substantially the same as one of the forfeiture-triggering crimes listed in Act 140.  For the reasons that follow, we affirm.

---

[1] Act of July 8, 1978, P.L. 752, *as amended*, 43 P.S. §§ 1311-1315.

## I. Factual Background and Procedure

The parties jointly stipulated to the salient facts before a Hearing Officer, and they are not in dispute. Petitioner became a member of SERS on November 14, 2007, by virtue of his commission as a judge on the municipal court. (Hearing Officer Opinion (Op.) Finding of Fact (FOF) ¶ 1.) On March 11, 2016, Petitioner was charged with two counts of making false statements to federal agents, a violation of Section 1001 of Title 18 of the United States Code, 18 U.S.C. § 1001 (Section 1001),[2] in the United States District Court for the Eastern District of Pennsylvania. (Hearing Officer Op., FOF ¶ 2; Reproduced Record (R.R.) at 16a-24a.) The indictment alleged as follows. On November 16, 2011, another judge on the municipal court contacted Petitioner "by telephone and, in an *ex parte* conversation[,] . . . requested favorable treatment for [a] defendant" in a case scheduled to be heard by Petitioner that afternoon. (Indictment ¶¶ 16-17.) The FBI began an investigation into the "circumstances surrounding the *ex parte* conversation" between Petitioner and the other municipal court judge and as part of

---

[2] Pursuant to Section 1001(a):

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

(1) falsifies, conceals, or covers up by trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title [or] imprisoned . . . .

18 U.S.C. § 1001(a).

2

that investigation, FBI agents interviewed Petitioner on September 19 and 20, 2012. (*Id.* ¶¶ 22-23, 26.) During these two interviews, Petitioner was asked whether anyone contacted him in advance of the November 16, 2011 hearing to ask him to rule in a particular party's favor. Petitioner "denied that any person had contacted him and asked for a favor" and stated that "no one had asked him to 'fix' the" November 16, 2011 hearing. (*Id.* ¶¶ 23, 26.) On May 26, 2016, Petitioner pled guilty to two counts of violating Section 1001. (Hearing Officer Op., FOF ¶ 20; R.R. at 68a-74a.) Effective the date of his guilty plea, Petitioner "terminated" his commission as a judge on the municipal court. (Hearing Officer Op., FOF ¶ 22; R.R. at 39a.)

A. Application for Annuity

After his termination from the municipal court, Petitioner submitted an Application for Annuity with SERS. (Hearing Officer Op., FOF ¶ 24; R.R. at 40a-45a.) By letter dated June 16, 2016, SERS informed Petitioner that pursuant to Act 140, Petitioner forfeited his pension benefit as of May 26, 2016, the date of his guilty plea, and that he was only entitled to the monies he contributed while a member of SERS, less any debts, fines, or restitution owed. (Hearing Officer Op., FOF ¶¶ 25-26; R.R. at 3a-6a.) In its letter, SERS explained that pursuant to Section 3(a) of Act 140,

> no public official or public employee nor any beneficiary designated by such public official or public employee[3] shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such

---

[3] Section 2 of Act 140 defined "[p]ublic official" or "public employee" as "[a]ny person who is elected or appointed to any public office or public employment including, justices, judges and justices of the peace . . . ." *Former* 43 P.S. § 1312.

3

public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.

(R.R. at 3a (quoting *former* 43 P.S. § 1313(a)).) SERS further explained that Section 2 of Act 140, *former* 43 P.S. § 1312, defined the term "[c]rimes related to public office or public employment" to include, *inter alia*, Section 4906 of the Crimes Code, 18 Pa.C.S. § 4906 (Section 4906),[4] which criminalizes giving false reports to law enforcement, and any federal crime "substantially the same" as Section 4906.[5] (R.R. at 3a (quoting *former* 43 P.S. § 1312).) Upon review of Petitioner's record, SERS found that Petitioner was a public official when he pled guilty to two counts of violating Section 1001 and that Section 1001 is a crime related to public office or public employment because it is substantially the same as Section 4906. (R.R. at 3a-6a.) As such, SERS concluded that pursuant to Act 140,

---

[4] Section 4906, in relevant part, provides:

(a) Falsely incriminating another.--Except as provided in subsection (c), a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.

(b) Fictitious reports.--Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:

(1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or

(2) pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident.

18 Pa.C.S. § 4906(a)-(b).

[5] Subsequent to these events, Act 140 was amended by the Act of March 28, 2019, P.L. 1, which, among other things, expanded the list of state crimes for which one's benefits could be forfeited. This amendment does not change the inclusion of Section 4906 which remains a crime related to public office or public employment as defined by Section 2 of Act 140.

4

Petitioner, while entitled to receive the monies he contributed while a member of SERS, forfeited his pension benefit when he pled guilty to two counts of violating Section 1001. (R.R. at 3a-6a.)

Petitioner timely appealed the determination of SERS to the Board. On August 4, 2016, SERS filed an Answer and a Motion to Dismiss Petitioner's appeal based upon this Court's decision in *Merlino v. Philadelphia Board of Pensions and Retirement*, 916 A.2d 1231 (Pa. Cmwlth. 2007), wherein we held that Section 1001 and Section 4906 are substantially the same for purposes of Act 140. Petitioner filed a response in opposition. By Opinion and Order dated June 2, 2017, the Board denied the Motion to Dismiss, reasoning that Petitioner "raised sufficient legal and factual arguments that merit the creation of a factual record in this appeal and a recommendation on the applicable law by a hearing officer." (Board June 2, 2017 Op. and Order at 1-2.) Accordingly, the Board directed that Petitioner's appeal should proceed to a hearing officer.

## B. Proceedings before the Hearing Officer

The parties ultimately agreed that an evidentiary hearing before the Hearing Officer was not necessary. Instead, the parties submitted stipulations of fact, joint exhibits, and written briefs setting forth their respective arguments. After review of the parties' submissions, the Hearing Officer issued an Opinion and Recommendation dated August 6, 2018. The Hearing Officer made findings of fact, which are summarized, in relevant part, above. Upon review, the Hearing Officer determined that Petitioner had been convicted of a crime related to public office or public employment as Section 1001 is substantially the same as Section 4906. In reaching this decision, the Hearing Officer found this Court's decision in *Merlino* to

be controlling. Accordingly, the Hearing Officer concluded that Petitioner forfeited his pension benefit when he pled guilty to two counts of violating Section 1001 and recommended the Board affirm the determination of SERS.

C. Proceedings before the Board

Petitioner filed exceptions to the Hearing Officer's Opinion and Recommendation. Petitioner's exceptions challenged the Hearing Officer's ultimate conclusion that Petitioner forfeited his pension when he pled guilty to two counts of violating Section 1001. Petitioner's first two exceptions related to our decision in *Merlino*. In his first exception, Petitioner argued, contrary to our holding in *Merlino*, that Section 1001 is not substantially the same as Section 4906 because Section 4906 contains elements of proof that Section 1001 does not contain. In his second exception, Petitioner argued that *Merlino* is factually distinguishable and should not control his case. Petitioner asserted that when determining whether two crimes are substantially the same for purposes of Act 140, the facts of an underlying conviction should be considered in addition to the elements and *mens rea* of the crimes being compared. As support for his argument that the underlying facts should be considered, Petitioner relied on our Supreme Court's citation to *Petition of Hughes*, 532 A.2d 298 (Pa. 1987), in *Shiomos v. State Employes' Retirement Board*, 626 A.2d 158 (Pa. 1993). Petitioner submitted that a review of the facts of his underlying conviction demonstrates that his conduct, while a violation of Section 1001, does not violate Section 4906. As such, Petitioner argued that *Merlino* is factually

6

distinguishable because the conduct of the petitioner in *Merlino* violated both Section 1001 and Section 4906.[6]

By Opinion and Order dated September 3, 2019, the Board denied Petitioner's exceptions to the Hearing Officer's Opinion and Recommendation and confirmed the forfeiture of Petitioner's pension benefit. The Board accepted and adopted the Opinion and Recommendation of the Hearing Officer, and supplemented that determination with its own Opinion. Upon review, the Board agreed with the Hearing Officer that Section 1001 and Section 4906 are substantially the same for purposes of Act 140.

In rejecting Petitioner's first exception, the Board found that Petitioner essentially argued that "the elements of a federal crime must be identical" to one of the forfeiture-triggering state crimes listed in Act 140. (Board Sept. 3, 2019 Op. at 3.) Citing precedent from this Court, the Board concluded that two crimes need not contain identical elements of proof to be substantially the same for purposes of Act 140, but rather two crimes are substantially the same if they "prohibit the same type of behavior." (Board Sept. 3, 2019 Op. at 3 (emphasis omitted).) The Board determined that Section 1001 and Section 4906 prohibit the same type of behavior, reporting false information to law enforcement, and, therefore, the two crimes at issue are substantially the same. The Board further concluded that "the nature of [Petitioner's] misrepresentation to law enforcement does not affect the analysis required to determine whether Act 140 applies" and, therefore, "[t]he fact that [Petitioner's] lie to the FBI involved his denial of impropriety as opposed to falsely stating that something happened is a distinction without a difference for purposes of

---

[6] In his exceptions, Petitioner also challenged certain findings of fact made by the Hearing Officer, with which the Board agreed, and it revised certain findings of fact, which are not pertinent to the issues before us.

7

determining whether the federal crime is substantially similar to an enumerated Act 140 crime." (Board Sept. 3, 2019 Op. at 3-4.)

The Board also rejected Petitioner's second exception, concluding that based upon precedent from this Court, Act 140 "does not require that the facts of a particular case be analyzed" when determining whether two crimes are substantially the same. (Board Sept. 3, 2019 Op. at 4.) As such, the Board disagreed with Petitioner's attempts to factually distinguish *Merlino*. While the Pennsylvania Supreme Court has not reviewed whether Section 1001 and Section 4906 are substantially the same for purposes of Act 140, the Board concluded that until the Supreme Court holds otherwise, *Merlino* is controlling. The Board analogized this "to the situation . . . regarding the applicability of Act 140 to inchoate crimes." (Board Sept. 3, 2019 Op. at 5.) In doing so, the Board cited *Luzerne County Retirement Board v. Seacrist*, 988 A.2d 785, 789 (Pa. Cmwlth. 2010), wherein we held that the inchoate crimes of attempt, conspiracy, or solicitation to commit one of the enumerated forfeiture-triggering state crimes in Act 140 results in "the same civil consequences," in terms of pension forfeiture, as the commission of one of the enumerated forfeiture-triggering state crimes.

Accordingly, the Board denied Claimant's request to reverse the determination of SERS. Thereafter, Petitioner filed the instant petition for review with this Court.[7]

---

[7] The issues presented in this case are questions of law. As such, our standard of review is plenary. *Heilbrunn v. State Employees' Ret. Bd.*, 108 A.3d 973, 976 n.2 (Pa. Cmwlth. 2015).

## II. Parties' Arguments

### A. Petitioner

Petitioner presents the following three issues for our review: (1) whether the Board erred in concluding that Section 1001 is substantially the same as Section 4906; (2) whether the Board erred when it relied upon *Merlino* and "by failing to engage in the proper analysis to factually distinguish" *Merlino*; and (3) whether the Board erred by failing to properly consider that our Supreme Court has not held that Section 1001 is substantially the same as Section 4906 when the Board declined to examine the underlying facts of Petitioner's federal conviction. (Petitioner's Brief (Br.) at 4.) More specifically, Petitioner argues that, contrary to our holding in *Merlino*, a textual analysis of Section 1001 and Section 4906 demonstrates that the two crimes are not substantially the same for purposes of Act 140. Petitioner submits that "a violation of [Section 4906] is always substantially the same as a violation of [Section 1001]" but that "every violation of [Section 1001] is not necessarily substantially the same as a violation of [Section 4906]." (Petitioner's Br. at 18-19 (emphasis omitted).) In other words, Section 1001 is broader than Section 4906, which contains elements of proof that Section 1001 does not. Specifically, Petitioner cites the fact that, unlike Section 1001, "in order to convict a defendant under [S]ection 4906(a), the Commonwealth must prove that the defendant knowingly gave false information to a law enforcement officer intending to implicate another." (Petitioner's Br. at 19 (emphasis omitted).) Petitioner also cites the fact that, unlike Section 1001, "[S]ection 4906(b) requires the Commonwealth to prove that the defendant falsely reported an offense or incident knowing it did not occur or the defendant pretended to furnish information about an offense or incident about which he had no information." (Petitioner's Br. at 21.)

9

Since conduct can violate Section 1001, without violating Section 4906, Petitioner concludes the two crimes are not substantially the same for purposes of Act 140.

Alternatively, Petitioner argues *Merlino* is factually distinguishable. As he did before the Board, Petitioner contends that our Supreme Court's citation to *Petition of Hughes* in *Shiomos* indicates "that the underlying facts of a petitioner's federal conviction, in addition to the elements and *mens rea* of the crime, should be considered when determining whether the offense is substantially the same" as one of the forfeiture-triggering state crimes enumerated in Act 140. (Petitioner's Br. at 30.) As further support that we should examine the underlying facts of his criminal conviction, Petitioner cites Judge McCullough's concurring opinion in *Reilly v. Luzerne County Retirement Board* (Pa. Cmwlth., No. 2335 C.D. 2013, filed September 29, 2014) (McCullough, J., concurring).[8] Petitioner submits that, unlike the petitioner in *Merlino*, whose conduct clearly violated Section 4906, Petitioner's conduct, while a crime under Section 1001, does not violate Section 4906 because he never "sought to implicate anyone in a crime nor did he attempt to furnish evidence of a crime that he knew he did not possess." (Petitioner's Br. at 19.) As such, Petitioner argues that "*Merlino* should be limited in its application and should not apply to the instant matter." (Petitioner's Br. at 19.)

Additionally, Petitioner argues the Board erred by not properly considering that our Supreme Court has not held that Section 1001 and Section 4906 are substantially the same. Petitioner "submits the Board improperly relied upon *Seacrist*" to support its conclusion that *Merlino* is controlling, "as the facts [of *Seacrist*] are distinguishable and the issues are not the same." (Petitioner's Br. at

---

[8] Pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported panel decisions of this Court may be cited for their persuasive value.

29.)  Since the Supreme Court has not addressed whether Section 1001 and Section 4906 are substantially the same, Petitioner argues the issue is "unresolved" and "should be analyzed on a case[-]by[-]case basis by reviewing all of the facts and circumstances thoroughly."  (Petitioner's Br. at 29.)

Accordingly, Petitioner requests that we reverse the Board's September 3, 2019 Order.

B. The Board

Noting that this case does not present an issue of first impression, the Board "submits that the analysis of this case need go no further" than a review of *Merlino* because that case "compel[s] the conclusion that" Section 1001 is substantially the same as Section 4906 for purposes of Act 140.  (Board's Br. at 15.)  Nevertheless, the Board addressed Petitioner's arguments.  The Board disagrees with Petitioner's conclusion that Section 1001 and Section 4906 are not substantially the same for purposes of Act 140.  The Board describes Petitioner's argument as essentially requiring the elements of proof to be identical for the two crimes to be considered substantially the same.  Citing decisions of this Court, the Board asserts that the two "statutes' elements need not align perfectly for the two crimes to be substantially the same" but are substantially the same if the two crimes target the same behavior.  (Board's Br. at 23 (internal quotations omitted).)  The Board argues, citing *Merlino* and *Commonwealth v. McFadden*, 850 A.2d 1290 (Pa. Super. 2004), that "[t]he elements and *mens rea* of both crimes [at issue here] make it illegal to knowingly lie to law enforcement."  (Board's Br. at 21.)  Since Section 1001 and Section 4906 target the same behavior, the Board concludes the two crimes are substantially the same.

11

The Board also disagrees with Petitioner's assertion that we should look to the underlying facts of a public official's or public employee's criminal conviction, in addition to the elements and *mens rea* of the two crimes at issue, to determine whether the two crimes are substantially the same. The Board contends that while "the facts are critical to the crimes charged and ultimately, to the conviction or pleas, they are not and should not be part of the [] Board's analysis." (Board's Br. at 26.) According to the Board, a "federal crime either is substantially the same as a state crime or it is not. It is the crime itself, not the underlying facts[,] that matter." (*Id.* at 24.) Further, the Board argues that it is not in a position to examine the underlying facts of a public official's or public employee's criminal conviction. The Board asserts that it

> is not involved in the public official['s] or public employee's criminal prosecution. It has no say whatsoever in the crime that is charged and does not have the opportunity to consider the credibility of the criminal defendant or the weight to be given any of the evidence. It plays no role in plea negotiations. If the record is sealed, the [] Board might only have knowledge of the facts set forth in the charging documents.

(*Id.* at 26.) Since the underlying facts of Petitioner's criminal conviction should not be examined, the Board disagrees with Petitioner's attempt to distinguish *Merlino*.

The Board also disagrees with Petitioner's argument that since our Supreme Court has not reviewed whether Section 1001 and Section 4906 are substantially the same, *Merlino* should not control. The Board stands by its analogy to the situation regarding inchoate crimes and its citation to *Seacrist*. The Board contends *stare decisis* requires us to apply *Merlino* because our Supreme Court has not overruled that case and because Petitioner has not presented us with a compelling reason to revisit the holding in that case. If the Court was to set aside *Merlino* and examine the issue on a case-by-case basis, the Board suggests that "public pension plan

12

administrators and participants" will be left with "an absence of predictability and consistency," which will result in inconsistent pension forfeiture decisions. (Board's Br. at 32.)

Accordingly, the Board concludes that *Merlino* is controlling and "compel[s] the conclusion that [Petitioner] forfeited his pension." (Board's Br. at 27.) As such, the Board asks us to affirm its September 3, 2019 Order.

## III. Pension Forfeiture

We begin with a review of Act 140. "The purpose of . . . Act [140] is to deter criminal conduct in public employment by causing a forfeiture of pension benefits to which a public official or public employee would otherwise be entitled." *Seacrist*, 988 A.2d at 787. That being said, "[p]ension forfeiture is not favored and, thus, pension forfeiture statutes are strictly construed." *Wiggins v. Phila. Bd. of Pensions & Ret.*, 114 A.3d 66, 72 (Pa. Cmwlth. 2015). As set forth above, pursuant to Section 3(a) of Act 140:

> [N]o public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense **to any crime related to public office or public employment**.

*Former* 43 P.S. § 1313(a) (emphasis added). Section 2 of Act 140 defined the term "[c]rimes related to public office or public employment," in relevant part, to include "Section 4906 (relating to false reports to law enforcement authorities)" and "all criminal offenses as set forth in Federal law . . . **substantially the same** as the crimes enumerated herein," which include Section 4906. *Former* 43 P.S. § 1312 (emphasis added). Act 140 does not define the phrase "substantially the same." In *Roche v.*

13

*State Employes' Retirement Board*, 731 A.2d 640 (Pa. Cmwlth. 1999), this Court interpreted the phrase "substantially the same," as used in Act 140's definition of crimes related to public office or public employment, for the first time. We concluded that when determining whether a federal crime is substantially the same as one of the forfeiture-triggering state crimes listed in Act 140, it is necessary to compare the two crimes at issue, including a comparison of the elements and *mens rea*. *Roche*, 731 A.2d at 646-48. Since *Roche*, this Court has consistently held that "when determining whether a state crime and a federal crime are substantially the same for the purposes of . . . Act [140], this Court must compare the **elements** of the two crimes including the required **_mens rea_**." *DiLacqua v. City of Phila., Bd. of Pensions & Ret.*, 83 A.3d 302, 310 (Pa. Cmwlth. 2014) (emphasis in original).

In the present matter, the parties do not contest that Petitioner was a public employee or public official when he pled guilty to two counts of violating Section 1001. Rather, the parties contest whether Petitioner pled guilty to a "[c]rime[] related to public office or public employment," as that phrase was defined in Section 2 of Act 140. More specifically, the parties contest whether Section 1001 is substantially the same as Section 4906, which is an enumerated offense within Act 140's definition of crimes related to public office or public employment.

Petitioner pled guilty to violating Section 1001(a), which provides:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

(1) falsifies, conceals, or covers up by trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

14

(3)  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title [or] imprisoned . . . .

18 U.S.C. § 1001(a).  We must compare Section 1001 to Section 4906 to determine whether they are substantially the same for purposes of Act 140.  Section 4906, in relevant part, provides:

> (a)  Falsely incriminating another.--Except as provided in subsection (c), a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.
>
> (b)  Fictitious reports.--Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:
>
> > (1)  reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or
> >
> > (2)  pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident.

18 Pa.C.S. § 4906(a)-(b).

This Court addressed whether a petitioner's conviction under Section 1001 was substantially the same as Section 4906 for purposes of Act 140 in *Merlino*.  The petitioner in *Merlino* worked as a police officer in Philadelphia, which qualified him for a city pension.  During his employment as a police officer, the petitioner was involved in a drug investigation, wherein two boxes thought to contain drugs were seized.  The petitioner and another officer

> took the boxes to the canine unit where a drug dog responded positively for the presence of drugs.  [The petitioner] stated to the officer preparing a[n] . . . [i]nvestigative [r]eport that the dog had sniffed the

15

boxes inside the truck. A search warrant was then obtained and police found 23 kilograms of cocaine. The federal government took over the investigation, and an Assistant U.S. Attorney met with [the petitioner] on January 5, 2004[,] to prepare for trial. [The petitioner] answered "yes" when questioned whether the dog "hit" on the boxes inside the truck, when in fact that statement was false and eventually led to a dismissal of the indictment related to the investigation. [The petitioner] pled guilty in July 2004 to one count of making a false statement to a federal agency under [Section 1001] and was sentenced to serve eighteen months of probation and to pay a $500 fine.

*Merlino*, 916 A.2d at 1233. Thereafter, the petitioner submitted an application for pension benefits. The Philadelphia Board of Pensions and Retirement determined that the petitioner was a public employee or public official when he pled guilty to violating Section 1001 and that a violation of Section 1001 is a crime related to public office or public employment because it is substantially the same as Section 4906. *Merlino*, 916 A.2d at 1233. As such, the Philadelphia Board of Pensions and Retirement denied the petitioner's application for pension benefits, concluding, in relevant part, that the petitioner forfeited his pension benefit pursuant to Act 140 when he pled guilty to violating Section 1001. The petitioner appealed that determination to the Court of Common Pleas of Philadelphia County, which affirmed. The petitioner then appealed to this Court arguing, in relevant part, that Section 1001 is not substantially the same as Section 4906 "because there is no evidence that he made an untruthful accusation or falsely incriminated anyone . . . ." *Merlino*, 916 A.2d at 1235. We compared Section 1001 and Section 4906 and concluded that "[b]oth statutes require a false statement knowingly made to law enforcement authorities." *Merlino*, 916 A.2d at 1236. As such, we held that Section 1001 is substantially the same as Section 4906 for purposes of Act 140. *Merlino*, 916 A.2d at 1236.

16

We subsequently found our decision in *Merlino* precedential on this issue in *Reilly*. Reilly was the elected Clerk of Courts for Luzerne County. By virtue of that position, Reilly became a member of the Luzerne County Employees' Retirement System. While in office as Clerk of Courts, Reilly was charged with violating Section 1001. Reilly's criminal information alleged that he represented to "FBI Special Agents that he never received any money from another person other than a one-time campaign contribution of $200 when in truth, as he then well knew, he had received more than three payments of money from that other person." *Reilly*, slip op. at 2. Reilly eventually pled guilty to violating Section 1001. Thereafter, the Luzerne County Employees' Retirement System Board voted to deny Reilly's pension benefit. Reilly initiated a declaratory judgment action in the Court of Common Pleas of Luzerne County requesting that court "to declare that because he was not convicted of a crime related to public office or public employment, he was entitled to receive his retirement benefits." *Reilly*, slip op. at 3. The common pleas court determined that Section 1001 is substantially the same as Section 4906 and, therefore, Reilly had been convicted of a crime related to public office or public employment. Reilly appealed to this Court, arguing that the common pleas court erred when it determined that Section 1001 and Section 4906 are substantially the same. In doing so, Reilly attempted to distinguish *Merlino* by asserting that the conduct that led to him being charged with violating Section 1001 did not violate Section 4906. Reilly submitted that

> he was convicted because he made a statement to FBI agents concerning the number of campaign contributions he received from an individual during his campaigns when he ran for State Representative and Clerk of Courts for Luzerne County. He did not try to implicate another individual, did not try to report an offense, and did not furnish information concerning an offense and had no information concerning any offense.

17

*Reilly*, slip op. at 11. We rejected this argument, stating that "[t]his Court does not examine the particular facts underlying the federal conviction when determining whether a federal crime and state crime are substantially the same," but rather when examining whether two crimes are substantially the same for purposes of Act 140, we "must compare the **elements** of the two crimes including the required ***mens rea***." *Reilly*, slip op. at 11 (quoting *DiLacqua*, 83 A.3d at 310) (emphasis in original). We concluded that we were bound by *Merlino* and affirmed the common pleas court's decision.

Judge McCullough wrote separately in a concurring opinion in *Reilly*, highlighting that, in contrast to the conduct in *Merlino*, she did not find Reilly's conduct to "fall squarely within the language of Section 4906(b)(1)." *Reilly*, slip op. at 1 (McCullough, J., concurring). She explained:

> In contrast to the facts of *Merlino*, Reilly did not report an offense to law enforcement officers knowing that it had not occurred. In fact, his conduct was quite the opposite; in denying that he received more than one campaign contribution from another person, Reilly denied knowledge of an offense. Section 4906(b)(1) does not on its face apply to an individual who denies committing a crime of which he is accused, nor does it apply to a failure to supply relevant information during an investigation. Rather, [S]ection 4906(b)(1) only states that it is a crime to knowingly report an offense that has not taken place.

*Reilly*, slip op. at 3 (McCullough, J., concurring). She "would conclude that [Section 1001(a)(2)] is not substantially the same as the crime set forth in section 4906(b)(1)." *Reilly*, slip op. at 5 (McCullough, J., concurring). Notwithstanding her disagreement, however, Judge McCullough "recognize[d] that *Merlino* control[led] the outcome" and concurred in the result reached by the majority. *Reilly,* slip op. at 5 (McCullough, J., concurring).

18

## IV. Analysis

In the present matter, Petitioner's arguments focus on our decision in *Merlino* and why that case should not control the outcome of the present appeal. Petitioner submits that the Board erred in relying on *Merlino* and asserts, contrary to our holding in that case, Section 1001 and Section 4906 are not substantially the same for purposes of Act 140. Alternatively, Petitioner submits that *Merlino* is factually distinguishable from this case and, therefore, is not controlling.

A. <u>Whether the Board erred in relying on *Merlino* as controlling precedent.</u>[9]

Petitioner argues that *Merlino* was wrongly decided because Section 1001 and Section 4906 are not substantially the same and, therefore, should not be followed. Further, Petitioner argues that because "[t]he Pennsylvania Supreme Court has not issued a holding or adopted a specific standard to apply in determining whether" Section 1001 is substantially the same as Section 4906, this issue "should be analyzed on a case[-]by[-]case basis." (Petitioner's Br. at 29.) However, Petitioner's argument discounts the role of *stare decisis*. Absent an *en banc* decision from this Court or a decision from our Supreme Court overruling *Merlino*, we are bound by *Merlino* and its progeny. *Crocker v. Workers' Comp. Appeal Bd. (Ga. Pac. LLC)*, 225 A.3d 1201, 1210 (Pa. Cmwlth. 2020) (quoting *Pries v. Workers' Comp. Appeal Bd. (Verizon Pa.)*, 903 A.2d 136, 144 (Pa. Cmwlth. 2006)). The Board analogized this to the situation involving inchoate crimes, citing *Seacrist*. Petitioner argues "the facts [of *Seacrist*] are distinguishable and the issues are not the same." (Petitioner's Br. at 29.) However, the Board cited *Seacrist*, not as substantive support that Section 1001 and Section 4906 are substantially the same, but to make its point that reported

---

[9] We have reordered Petitioner's arguments for ease of discussion.

19

decisions from this Court are controlling precedent until the Supreme Court holds otherwise. As we recognized in *Reilly*, *Merlino* is controlling precedent absent an *en banc* decision from this Court overturning *Merlino* or until our Supreme Court holds otherwise. *Reilly*, slip op. at 11-12. Therefore, we cannot conclude that the Board erred in relying on *Merlino* and *Reilly*.

B. <u>Whether Section 1001 and Section 4906 are substantially the same for purposes of Act 140.</u>

Petitioner argues that the two crimes at issue here are not substantially the same for purposes of Act 140. Petitioner calls our attention to the differences between Section 1001 and Section 4906. In doing so, Petitioner argues that Section 4906(a), "is not substantially the same as an offense pursuant to [Section 1001] because" Section 4906(a) requires the Commonwealth to "prove that a defendant knowingly gave false information to a law enforcement officer, intending to implicate another." (Petitioner's Br. at 19 (emphasis omitted).) As to Section 4906(b)(1), which criminalizes reporting "to law enforcement authorities an offense or other incident . . . knowing that it did not occur," 18 Pa.C.S. § 4906(b)(1), Petitioner argues

> Section 4906(b)(1) does not, on its face, apply to an individual who denies committing a crime of which he is accused, nor does it apply to a failure to supply relevant information during an investigation. Rather, [S]ection 4906(b)(1) only states that it is a crime to knowingly report an offense that **has not taken place**.

(Petitioner's Br. at 22 (emphasis in original).) However, Petitioner interprets Section 4906(b) narrower than have the courts of this Commonwealth. On this point, we find the Superior Court's decision in *McFadden* instructive.[10]

In that case, a police officer in Philadelphia was accused of sending an inappropriate message over her patrol car's computer. When first questioned by her superiors, the police officer denied that she sent the message; however, the police officer later admitted to sending the message. The police officer was convicted by a jury of, among other things, "making a false report to law enforcement," in violation of Section 4906(b), and the trial court denied her subsequent motion for arrest of judgment. *McFadden*, 850 A.2d at 1292. On appeal to the Superior Court, the police officer argued that "the trial court erred in denying her motion to arrest judgment because the evidence was insufficient as a matter of law to sustain her conviction of making a false report to law enforcement authorities and unauthorized use of a computer." *Id.* at 1291. Upon review of the false report to law enforcement violation, the Superior Court observed that the evidence at trial established that the police officer sent the message at issue over her patrol car computer and that she "lied to her superiors when questioned about the message, claiming that she knew nothing about it." *Id.* at 1294. The Superior Court concluded that "[t]his evidence was more than sufficient to sustain a conviction for making false reports" under Section 4906(b). *McFadden*, 850 A.2d at 1294.

Petitioner further argues that "the Board erred when it concluded that the elements" of Section 1001 and Section 4906 "do not need to be identical" and need only prohibit the same type of behavior. (Petitioner's Br. at 22.) However, Section

___

[10] Although not binding on this Court, we may look to Superior Court decisions for guidance when they address analogous issues. *A.S. v. Pa. State Police*, 87 A.3d 914, 919 n.9 (Pa. Cmwlth. 2014).

2 of Act 140 defined the term "[c]rimes related to public office or public employment" to include any federal crimes that are "**substantially** the same" as one of the forfeiture-triggering state crimes specifically listed therein. *Former* 43 P.S § 1312 (emphasis added). Petitioner's argument ignores the word "**substantially**," making it surplusage, and reads Act 140 as requiring a federal crime to contain the identical elements of proof as one of the enumerated state crimes for those two crimes to be substantially the same. Pursuant to the rules of statutory construction, "[t]he courts must construe every statute, if possible, to give effect to all of its provisions so that none are rendered mere surplusage." *White v. Assocs. in Counseling & Child Guidance, Inc.*, 767 A.2d 638, 642 (Pa. Cmwlth. 2001) (citing Sections 1921(a) and 1922(2) of the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1921(a), 1922(2)). Had the legislature intended a federal crime to be considered "substantially the same" as one of the forfeiture-triggering state crimes listed in Act 140 **only** if the federal crime at issue is identical to one of the state crimes, the legislature could have used "the same as," "identical," or a synonym thereof instead of the word "substantially," and it did not.

In *Scarantino v. Public School Employees' Retirement Board*, 68 A.3d 375 (Pa. Cmwlth. 2013), we rejected an argument similar to the one Petitioner advances here. The petitioner in *Scarantino* argued, as relevant here, "that the proper interpretation of the phrase ['substantially the same'] requires that the federal crime must be essentially or fundamentally **identical** to" one of the forfeiture-triggering state crimes listed in Act 140 for the federal offense to be a crime related to public office or public employment. 68 A.3d at 379. We disagreed and concluded that the elements of proof and *mens rea* of two crimes need not be identical to be substantially the same; rather two crimes are substantially the same if the two crimes

"target the same behavior." *Id.* at 381. As we stated in *Merlino*, upon review of the *mens rea* and elements of Section 1001 and Section 4906, it is clear that "[b]oth statutes require a false statement knowingly made to law enforcement authorities" and, therefore, Section 1001 and Section 4906 are substantially the same for purposes of Act 140. *Merlino*, 916 A.2d at 1236; *see also McFadden*, 850 A.2d at 1294.

C. Whether *Merlino* is factually distinguishable from the present matter.

Alternatively, Petitioner argues that *Merlino* is factually distinguishable from the present matter and should not control the decision here. Citing our Supreme Court's citation to *Petition of Hughes* in *Shiomos*, Petitioner submits that we should consider the facts underlying his conviction, in addition to the *mens rea* and elements of the crimes at issue, when considering whether Section 1001 and Section 4906 are substantially the same. Petitioner asserts that unlike the petitioner in *Merlino*, his conduct, while a crime under Section 1001, does not violate Section 4906. Essentially, Petitioner contends that a federal crime cannot be substantially the same as one of the forfeiture-triggering state crimes listed in Act 140 unless that official's or employee's conduct leading to the federal conviction also violates one of the forfeiture-triggering state crimes.

There is no statutory support or controlling precedent to support Petitioner's argument that we must examine the facts underlying a federal conviction when determining whether a federal crime is substantially the same as one of the forfeiture-triggering state crimes. In the case of a federal conviction, Act 140's definition of "[c]rimes related to public office or public employment" requires us to examine the **federal crime** at issue and compare that crime to one of the listed **forfeiture-**

23

**triggering state crimes** to determine if the two crimes are substantially the same. As stated above, we have consistently held that, when determining whether two statutes are substantially the same, we must "compare the **elements** of the two crimes including the required **mens rea**." *DiLacqua*, 83 A.3d at 310 (emphasis in original). Thus, when comparing two crimes to determine if they are substantially the same, the focus is on the **text of the statutes**, **not the facts** of the underlying federal conviction. As the Board succinctly stated, a "federal crime either is substantially the same as a state crime or it is not. It is the crime itself, not the underlying facts that matter." (Board's Br. at 24.)

In *Reilly,* this Court rejected the exact argument Petitioner makes here. Like Petitioner, Reilly attempted to factually distinguish *Merlino* arguing that while his conduct is a crime under Section 1001, his conduct did not violate Section 4906. We rejected this argument, concluding that "[t]his Court does not examine the particular facts underlying the federal conviction when determining whether a federal crime and state crime are substantially the same." *Reilly*, slip op. at 11. While, as Petitioner points out, Judge McCullough individually would conclude that Reilly's conduct did not violate Section 4906(b)(1), she nonetheless concurred with the result reached by the majority, recognizing that *Merlino* is controlling. Further, in *DiLacqua*, like in *Reilly,* we held that when considering whether a federal crime is substantially the same as one of the state forfeiture-triggering crimes "the particular facts underlying the federal conviction do not determine" whether those crimes are substantially the same. *DiLacqua*, 83 A.3d at 310.

Our Supreme Court's citation to *Petition of Hughes* in *Shiomos* does not support Petitioner's contention that we should consider the facts underlying his conviction, in addition to the *mens rea* and elements of the crimes at issue, when

24

considering whether two crimes are substantially the same for purposes of Act 140. In *Shiomos*, the appellant, a former judge on the Court of Common Pleas of Philadelphia County, asserted an as-applied constitutional challenge of Act 140. The appellant was convicted of two counts of extortion under the Hobbs Act, 18 U.S.C. § 1951. Although the appellant did not dispute that the federal crime of which he was convicted was substantially the same as one of the forfeiture-triggering state crimes listed in Act 140, our Supreme Court, without examining the underlying facts of the appellant's conviction, citing *Petition of Hughes*, concluded that it was. *Shiomos*, 626 A.2d at 161. Specifically, the Court concluded that the appellant's Hobbs Act violation was equivalent to a violation of Section 4701 of the Crimes Code, 18 Pa.C.S. § 4701 (Section 4701), which criminalizes bribery in official and political matters.

> In *Petition of Hughes*, our Supreme Court considered whether
>
> Article II, Section 7 of the Pennsylvania Constitution, which prohibits those who have been convicted of "infamous crimes" from holding public office in Pennsylvania, should be applied to bar the election of a candidate for public office who was convicted in federal court of conspiracy to obstruct interstate commerce in violation of the Hobbs Act.

532 A.2d at 299. Article II, section 7 of the Pennsylvania Constitution provides that "[n]o person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." PA. CONST. art. II, § 7. The Court stated that "the facts underlying [the candidate's] conviction is relevant . . . in considering whether his conviction was for an 'infamous' crime within the meaning of Article II, Section 7." *Petition of Hughes*, 532 A.2d at 301. The Court

25

determined that the facts underlying the candidate's "federal conviction would constitute a violation of" Section 4701. *Id.*

It is clear from a review of *Shiomos* that our Supreme Court cited *Petition of Hughes*, not for the notion that the facts underlying a criminal conviction must be examined when determining whether two crimes are substantially the same for purposes of Act 140, but rather in support of its conclusion that a particular Hobbs Act violation is equivalent to a violation of Section 4701. The Supreme Court did not examine the facts underlying the appellant's criminal conviction in *Shiomos*, and the Supreme Court in its citation to *Petition of Hughes* made no indication that the underlying facts of a criminal conviction should be considered when determining whether two crimes are substantially the same. Accordingly, based on our consistent precedent, we cannot accept Petitioner's attempts to factually distinguish *Merlino*.

Finally, we agree with the Board that neither SERS, the Board, nor this Court are in a position to reweigh the evidence against public officials or public employees convicted of federal crimes to determine whether their conduct also violates one of the forfeiture-triggering state crimes. If we were required to examine public officials' or public employees' underlying convictions to determine whether their conduct also violates one of the forfeiture-triggering state crimes, we would essentially be determining the public officials' or public employees' guilt, which is not our function. Nor are we in the position to do so with the limited record before us. In summary, determining whether two statutes are substantially the same requires us to examine the **text** of the two statutes, not the underlying **facts** of a public officials' or public employees' criminal conviction, and, therefore, we will not examine the underlying facts of Petitioner's criminal conviction.

## V. Conclusion

Pursuant to Section 3 of Act 140, the pension benefit of a public official or public employee is forfeited when that official or employee is convicted of a crime related to public office or public employment. *Former* 43 P.S. § 1313(a). Section 2 of Act 140 defined the term "[c]rimes related to public office or public employment" to include any federal crime substantially the same as one of the enumerated forfeiture-triggering state crimes; Section 4906 is one of these enumerated crimes. *Former* 43 P.S. § 1312. Petitioner, a former judge on the municipal court, was convicted of violating Section 1001. Pursuant to *Merlino* and *Reilly*, Section 1001 is substantially the same as Section 4906 for purposes of Act 140. Thus, Petitioner forfeited his pension benefit when he pled guilty to violating Section 1001. Accordingly, we affirm the decision of the Board holding likewise.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Ceisler did not participate in the decision in this case.

27

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph J. O'Neill,                        :
                    Petitioner           :
                                          :
            v.                            :    No. 1359 C.D. 2019
                                          :
State Employees' Retirement System,      :
                    Respondent           :

## **O R D E R**

**NOW**, October 19, 2020, the Order of the State Employees' Retirement System Board dated September 3, 2019, is hereby **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge