Rosemary DiLACQUA

v.

**CITY OF PHILADELPHIA, BOARD OF PENSIONS AND RETIREMENT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2013.

Decided Jan. 7, 2014.

Elise M. Bruhl, Deputy City Solicitor, Philadelphia, for appellant.

Mark E. Gottlieb, Philadelphia, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge, and PATRCIA A. McCULLOUGH, Judge.

OPINION BY Judge LEADBETTER.

Appellant, City of Philadelphia Board of Pensions and Retirement, appeals from the decision of the Court of Common Pleas of Philadelphia County reversing the Board's decision, to forfeit the pension of Appellee, Rosemary DiLacqua. DiLacqua pled guilty to one count of honest services mail fraud, 18 U.S.C. §§ 1341 and 1346, which the Board found to be substantially the same as the Pennsylvania crime of theft by deception, 18 Pa.C.S. § 3922. For the reasons set forth below, we affirm.

Appellee was employed as a full-time police officer with the City of Philadelphia from 1984 to 2009. Concurrently, from 2000 to 2008, Appellee served as the President of the Board of Directors of the Philadelphia Academy Charter School (Charter School). This was an unpaid volunteer position at the school where Appellee's autistic son was a student. As board president, Appellee was responsible for overseeing the Charter School's operations, including approving major expenditures and employee salaries. While serving on the Charter School's board, Appellee entered into three financial arrangements with the founder of the school, Brian Gardiner.

Appellee accepted a $15,000 loan from Gardiner in March 2002 to pay for legal representation for her husband and a gift of approximately $10,000 from him in August 2007 to assist in paying her daughter's college tuition. Appellee also solicited a $9000 loan from Gardiner in January 2005 issued directly to her sister. Appellee failed to disclose those financial arrangements to the board of the Charter School.

During this same period of time, Appellee approved expenditures, bonuses and salary increases to the benefit of Gardiner and Kevin O'Shea, the CEO of the Charter School. For example, O'Shea was hired in 2002 as director of operations at a salary of $60,000. By May 2008, O'Shea, a high school graduate with no prior school administration experience, had been promoted to CEO and earned in excess of $200,000 per year. As a member of the Charter School Board, Appellee voted to approve O'Shea's promotions and salary increases. In May 2006, Appellee signed a contract on behalf of the Charter School which provided that Gardiner would be paid $94,000 annually for 10 years with a three percent increase each year in exchange for 90 days of consulting services per year. In September 2007, Appellee signed an addendum to Gardiner's consulting contract, which extended the term of the contract through 2026 and increased the yearly salary adjustment to the greater of 10% or a cost of living increase. On January 8, 2008, Appellee sent a letter to the Charter School's outside accounting firm that affirmed that there were no material transactions that had not been recorded in the accounting records underlying the financial statements and that she was not aware of any fraud or suspected fraud at the Charter School. In April 2008, Appellee signed a memorandum, which O'Shea had drafted and backdated to October 2007, to make it appear that the entire Charter School Board had approved O'Shea's last raise.

The Charter School underwent a federal investigation into the activities of Gardiner and O'Shea, as well as other individuals associated with it. Appellee's acceptance of the gifts/loans and solicitation of the loan to her sister were uncovered during the federal investigation. In July of 2009, the United States filed a criminal information charging Appellee with "honest services" mail fraud, in violation of 18 U.S.C. § 1341 ("Frauds and Swindles") and 18 U.S.C. § 1346 (Definition of "Scheme or Artifice to Defraud") for failing to report the loans and payments on her annual state financial interest form pursuant to Sections 1104(a), 1105 and 1109(b) of the State Ethics Act, 65 Pa.C.S. §§ 1104(a), 1105, and 1109(b), and for failure to disclose these matters to the Charter School Board. Specifically, Appellee was charged with causing a letter from the Charter School to be delivered by United States mail to an outside auditing firm stating that "there were no material transactions that had not been properly recorded in the accounting records underlying the financial statements and that [Appellee] was not aware of any fraud or suspected fraud at [the Charter School]."[1]

1. More specifically, the criminal information provided:
    2. From in or about March 2002 to in or about May 2008, defendant ROSEMARY DiLACQUA devised and intended to devise a scheme to defraud the Philadelphia Academy Charter School, to obtain money and property by means of false and fraudulent pretenses, representations and promises, and to deprive the Philadelphia Academy Charter School of its intangible right of her honest services.
    3. The object of this scheme was for defendant ROSEMARY DiLACQUA to receive undisclosed loans and other payments from Kevin O'Shea, charged in this information,

On July 21, 2009, Appellee entered a guilty plea in the District Court for the Eastern District of Pennsylvania to Count IV of the criminal information which alleged Appellee's actions were in violation of 18 U.S.C. §§ 1341 and 1346. *See* Reproduced Record (R.R.) at 24a; R.R. at 192a. Both the United States and the court acknowledged that Appellee was not part of Gardiner's and O'Shea's fraud [2] and that she did not consider the payments to be bribes. The court specifically stated that Appellee's actions did not constitute a quid pro quo. Appellee did not plead guilty to theft or bribery. Appellee was sentenced on December 15, 2009, to one year and one day of incarceration, a $10,000 fine and $100 special assessment. Restitution was not ordered.

Appellee voluntarily terminated her employment with the City of Philadelphia as a police and prosecution detective effective June 19, 2009, as required by her June 2004 election to participate in the City's Deferred Retirement Option Plan (DROP) program. Upon separation, Appellee received her DROP payments. On June 20, 2009, Appellee began receiving retirement benefits based on her more than twenty years of credited service with the City of Philadelphia. On March 3, 2010, the Pension Board received notification that Appellee had pled guilty to the federal crime of honest services mail fraud. The Pension Board voted to disqualify Appellee from receipt of further pension benefits on March 18, 2010, pursuant to the Public Employee Pension Forfeiture Act [3] (Forfeiture Act) and the Philadelphia Public Employees Retirement Code, Phila. Code § 22–1302 (Philadelphia Retirement Code).

Appellee appealed the termination of benefits and the Pension Board held a hearing on December 8, 2010. The Pension Board denied Appellee's appeal on April 28, 2011. The Pension Board concluded that Appellee's position as board president at the Charter School met the definition of "public official" under both the Forfeiture Act and the Public Official and Employee Ethics Act. The Pension Board found that Appellee "accepted cash and gifts in exchange for favors that were in her power to grant as a result of her position with the [Charter School]." Pension Board's Opinion at 9. The Pension Board determined that the federal crime of honest services fraud is substantially

and [Brian Gardiner] that she failed to report on her annual statement of financial interest form or to disclose to other [Philadelphia Academy Charter School] board members while she was taking official action affecting O'Shea and [Brian Gardiner], including approving their lucrative [Philadelphia Academy Charter School] contracts and generous salary adjustments.

\* \* \*

13. On or about January 8, 2008, in the Eastern District of Pennsylvania and elsewhere, defendant ROSEMARY DiLACQUA, for the purpose of executing the scheme described above, and attempting to do so, caused to be delivered by United States mail and by a commercial interstate carrier, according to directions thereon, a letter from Philadelphia Academy Charter School to its outside auditing firm falsely certifying, among other things, that there were no material transactions that had not been properly recorded in the accounting records underlying the financial statements and that she was not aware of any fraud or suspected fraud at Philadelphia Academy Charter School.

All in violation of Title 18, United States Code, Sections 1341 and 1346.

**2.** Gardiner committed suicide during the course of the federal investigation. The United States charged O'Shea with mail fraud (18 U.S.C. §§ 1341, 1346) and theft from a federally funded program of more than $500,000 in property and cash in violation of 18 U.S.C. §§ 666(a)(1)(A), (b) and 2.

**3.** Act of July 8, 1978, P.L. 752, 43 P.S. §§ 1311–1315.

the same as the Pennsylvania crime of theft by deception. The Pension Board concluded that Appellee's actions met the criteria of "a bribe for performance, or affecting the performance of, or the non-performance of [her] official duties, as described in § 22–1302(1)(a)(.2) of the [Philadelphia Retirement] Code." *Id.* at 10. The Pension Board also concluded that Appellee's actions constituted graft or corruption in connection with her official employment, theft, embezzlement, willful misapplication, or other illegal taking of funds or property of the City, and malfeasance in office under §§ 22–1302(1)(a)(.3), (.4) and (.5) of the Philadelphia Retirement Code.

DiLacqua appealed to the court of common pleas. Common pleas held a hearing on February 7, 2012, at which the Court reversed the Board's decision to disqualify and terminate Appellee's pension benefits. Common pleas relied upon the June 24, 2010, United States Supreme Court decision in *Skilling v. United States,* 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010), which held that a conviction for honest services mail fraud based solely on a failure to disclose a conflict of interest was unconstitutional. In its opinion in support of its decision pursuant to Appellate Rule 1925(a), Pa.R.A.P. 1925(a), common pleas stated that "[c]onsidering that Appellee pled guilty to and was convicted under a now unconstitutional theory of honest services mail fraud, [the Pension Board] erred in determining that Appellee was disqualified from her pension under the [Philadelphia] Retirement Code." Common Pleas' Opinion at 12. Common pleas stated that the Pension Board erred in considering conflict of interest honest services mail fraud in its analysis of whether or not Appellee's actions fell under the

Forfeiture Act and the Philadelphia Retirement Code, and rejected the Pension Board's allegation that DiLacqua's appeal amounted to a collateral attack of her criminal conviction. Common pleas held that the Pension Board's decision to terminate Appellee's benefits based upon a conviction for a crime later deemed unconstitutional was both a violation of Appellee's constitutional rights and an error of law, as the decision in *Skilling* had rendered DiLacqua's conviction void and "nonexistent."

The Pension Board appealed to this Court, arguing that common pleas erred when it ruled that Appellee's criminal conviction did not exist. The Pension Board also asserts that Appellee was disqualified from receiving benefits under the Forfeiture Act because honest services mail fraud is substantially the same as theft by deception, and under the pension disqualification provisions of the Philadelphia Retirement Code, § 22–1302(.3)-(.5).

Under the Forfeiture Act, any public employee or public official who has been convicted of any of the crimes enumerated in Section 2 of the Act, 43 P.S. § 1312, or any federal crime which is substantially the same as [4] one of the enumerated crimes, forfeits her pension. Section 2 of the Forfeiture Act enumerates the state crimes related to public office or public employment, including crimes "relating to theft by deception" under Section 3922 of the Crimes Code, 18 Pa.C.S. § 3922. "Public official" and "public employee" are defined as "[a]ny person who is elected or appointed to any public office or employment ... or who is acting or who has acted in behalf of the Commonwealth or a political subdivision or any agency thereof...." 43 P.S. § 1312. Section 3(b) of the Forfei-

---

4. Section 2 of the Forfeiture Act also provides that "[i]n addition to the foregoing specific crimes, the term also includes all criminal offenses as set forth in [f]ederal law substantially the same as the crimes enumerated herein."

ture Act provides that, "[i]f a verdict of not guilty is rendered or the indictment or criminal information finally dismissed, then the public official ... shall be reinstated as a member of the pension fund or system and shall be entitled to all benefits including those accruing during the period of forfeiture if any." 43 P.S. § 1313(b). Trustees of a charter school are public officials. Section 1 of the Charter School Law, 24 P.S. § 17–1715–A(11).[5]

The Pennsylvania crime of theft by deception, 18 Pa.C.S. § 3922, is defined in relevant part as:

(a) *Offense defined.*—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction; or

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

Section 1341 of Title 18 of the United States Code, 18 U.S.C. § 1341, defines mail fraud as:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1346, 18 U.S.C. § 1346, expands the scope of § 1341 as follows:

For the purposes of this chapter [18 USCS §§ 1341 *et seq.*], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services.

Section 1346 was enacted in response to *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that Section 1341, as well as Section 1343 prohibiting wire fraud, did not reach schemes to defraud citizens of their intangible right to a public official's honest services, but rather the statutes were limited in scope to the protection of property rights. *United States v. Panarella,* 277 F.3d 678, 690 (3d Cir.2002).

The most common form of honest services fraud involves bribery of a public official, although pre-*Skilling* courts also recognized a second form, involving the failure by a public official to disclose a conflict of interest. *United States v. Antico,* 275 F.3d 245, 262–63 (3d Cir.2001). The Third Circuit has stated:

[W]here a public official conceals a financial interest in violation of state criminal law and takes discretionary action in his official capacity that the official knows will directly benefit the concealed interest, the official has deprived the public of his honest services, regardless whether the concealed financial interest improperly influenced the official's actions.

---

**5.** Act of March 10, 1949, P.L. 30, *as amended,* added by the Act of June 19, 1997, P.L. 225.

*Panarella,* 277 F.3d at 680. However, in *Skilling,* the United States Supreme Court specifically rejected failure to disclose a conflict of interest as a basis for honest services mail fraud. 130 S.Ct. at 2932. After reviewing the history of pre-*McNally* caselaw, the Court held that Section 1346 constitutionally criminalizes only kickback and bribery schemes. *Id.* at 2931.

We first turn to the trial court's holding that the *Skilling* decision rendered DiLacqua's conviction "void" and "nonexistent" and therefore, could not be the predicate for any pension forfeiture. We disagree. First, the *Skilling* decision did not invalidate Section 1346 *in toto,* let alone automatically render all honest services mail fraud convictions void. Even assuming, arguendo, that DiLacqua's conduct did not meet the post-*Skilling* confines of Section 1346, an issue we need not here decide,[6] her conviction is not void ab initio.

The Forfeiture Act provides that pension benefits are automatically forfeited upon a plea of guilty. Section 3(b), 43 P.S. § 1313(b). Pension benefits may be restored only if a public official is found not guilty or the criminal information is dismissed. *Id.* Although Appellee began appellate proceedings before the United States Court of Appeals for the Third Circuit, she ultimately abandoned her appeal. After direct appeal rights have been exhausted (or foregone), individuals are required to seek relief by vacation of judgment under 28 U.S.C. § 2255 or by writ of error *coram nobis. United States v. Lynch,* 807 F.Supp.2d 224 (E.D.Pa.2011).[7] In Appellee's case, only the grant of a writ of *coram nobis* by a federal court would remove her conviction from her criminal record. Consequently, the conviction remains extant as a basis for forfeiture of benefits.

Thus turning to the merits of its decision, the Board argues that pension forfeiture was appropriate as theft by deception and mail fraud are substantially the same. Appellee argues that she pled guilty to the now void crime of honest services mail fraud based upon a failure to disclose information, a crime which is not substantially similar to theft by deception. Appellee also argues that her conviction was unrelated to her public office or employment.

Appellee's argument that she is not required to forfeit her pension because her

---

**6.** As noted above, following its hearing, the Board found that DiLacqua's conduct amounted to bribery. Moreover,

> "[t]he bribery theory does not require that each *quid,* or item of value, be linked to a specific *quo,* or official act. Rather, a bribe may come in the form of a 'stream of benefits.'" *[United States v.] Wright,* 665 F.3d [560, 568 (3d Cir.2012)] (quoting *United States v. Bryant,* 655 F.3d 232, 240–41 (3d Cir.2011)). As noted, concealment of material information through false disclosure statements, by itself, cannot serve as the basis for an honest services mail fraud conviction, but when there is evidence that the concealment by false disclosures furthers a scheme to defraud through bribes and kickbacks, then the false disclosure statements can support such a conviction.

*United States v. Ciavarella,* 716 F.3d 705, 730 (3d Cir.2013). "The term 'kickback' means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances]." *Skilling,* 130 S.Ct. at 2933–34.

**7.** According to Federal Rule of Civil Procedure 60(b), Fed.R.Civ.P. 60(b), a writ of error *coram nobis* has been abolished and relief from judgment is governed by Rule 60. Nevertheless, the *Lynch* court granted a writ of error *coram nobis.*

conviction related to her duties as an unpaid volunteer in her private life and that position at the Charter School was unrelated to her employment as a police detect the Charter School's board of directors was unpaid, she was a "public official" for purposes of the Forfeiture Act, as the Charter School Law specifically states that trustees of charter schools "shall be public officials." *See* 24 P.S. § 17–1715–A (11). Although Appellee's pension accrued as a result of her employment as a Philadelphia police officer and her conviction was unrelated to this employment, Appellee's pension is still subject to forfeiture as the Forfeiture Act "contains no requirement that the pension benefits that are forfeited be necessarily connected to the public employment related to crime the public employee committed." *Pub. School Employes' Ret. Bd. v. Matthews*, 806 A.2d 971, 975 (Pa.Cmwlth.2002).

■ Appellee's argument that she pled guilty to honest services mail fraud based solely upon a failure to disclose information is likewise without merit. The record demonstrates that the criminal information alleged that Appellee "devised and intended to devise a scheme to defraud the [Charter School], to obtain money and property by means of false and fraudulent pretenses, representations and promises and to deprive the [Charter School] of its intangible right of her honest services." R.R. at 21a. The "false and fraudulent pretenses, representations and promises" language tracks the language of 18 U.S.C. § 1341, while the "honest services" language tracks the language of 18 U.S.C. § 1346. Also, the judgment entered against Appellee provides that she

pled guilty to Count IV of the criminal information and was adjudicated guilty of the offenses found at 18 U.S.C. §§ 1341 and 1346. R.R. at 192a. The criminal information outlined both the substantial sums paid by Gardiner to DiLacqua and her facilitation of Gardiner's and O'Shea's lucrative contracts at the expense of the Charter School, as well as her overt attempts to conceal these activities. However, the particular facts underlying the federal conviction do not determine the issue before us. Rather, when determining whether a state crime and a federal crime are substantially the same for the purposes of the Forfeiture Act, this Court must compare the *elements* of the two crimes including the required *mens rea*. *Scarantino v. Public Employees' Ret. Bd.*, 68 A.3d 375 (Pa.Cmwlth.2013); *Roche v. State Employes' Ret. Bd.*, 731 A.2d 640 (Pa.Cmwlth.1999). We are bound by these precedents.

■■ To be convicted of theft by deception, an individual must intentionally deprive another of his *property* by deception. *Commonwealth v. Sanchez*, 848 A.2d 977, 983 (Pa.Super.2004). In contrast, for a defendant to be found guilty of mail fraud, the government must prove the defendant's knowing and willful participation in a scheme or artifice to defraud another of his property *or the intangible right of honest services*, and "(3) the use of the mails or interstate wire communications in furtherance of the scheme." *United States v. Carbo*, 572 F.3d 112 (3d Cir.2009) (quoting *Antico*, 275 F.3d at 261).[8] On its face, the federal crime need not involve a deprivation of property. Of critical impor-

---

8. The element requiring the use of interstate mail is jurisdictional. This additional element does not factor into our analysis. In *Shiomos v. State Employees' Retirement Board*, 533 Pa. 588, 593, 626 A.2d 158, 161 (1993), the Pennsylvania Supreme Court held that a violation of the Hobbs Act, 18 U.S.C. § 1951, which contains a jurisdictional element requiring that the criminal act affect interstate commerce, was substantially the same as a violation of bribery in official and political matters, 18 Pa.C.S. § 4701.

tance, before *Skilling*, when Appellee was charged and pled guilty, the statute was judicially interpreted to require only a showing of failure to disclose a conflict of interest. Therefore, we cannot say that the crime to which Appellee pled guilty is substantially similar to theft by deception. We emphasize that this holding relates *only* to a pre-*Skilling* conviction. We need not address convictions which occurred after *Skilling* limited honest services mail fraud to schemes involving bribery and kickbacks.[9]

■ The Pension Board argues that Appellee was also disqualified from receiving pension benefits under the Philadelphia Retirement Code. Appellee argues that she cannot be disqualified under the Philadelphia Retirement Code because her crime was not related to her employment with the City. We agree.

■ The Philadelphia Retirement Code provides, in relevant part, that an employee shall not be entitled to retirement benefits if the employee pleads guilty or finally found guilty to:

(.2) Acceptance of a bribe for the performance, or affecting the performance or for the nonperformance of the employee's official duties . . . ;

(.3) Engaging in graft or corruption incident to or in connection with the employee's office or employment constituting a violation of the laws of the Commonwealth or the United States;

(.4) Theft, embezzlement, willful misapplication, or other illegal taking of funds or property of the City, or those of any official agency of the City, or agency, engaged in performing any governmental function for the City or the Commonwealth;

(.5) Malfeasance in office or employment;[10]

Phila. Code 22–1302. "Employee" is defined as "[a]ny employee, officer, or official who is paid from the Treasury of the City." Phila. Code § 22–105(15). "Elected official" is defined as "[a]ny individual who was elected to City office any general, municipal or special election." Phila. Code § 22–105(13). The disqualifying crimes must be committed in connection with the individual's employment or public office.

Appellee was employed by the City as a police officer and in that capacity meets the Philadelphia Retirement Code's definition of "employee." However, her crime was committed in connection with her volunteer position on the board of directors of the Charter School. In that position, Appellee was not paid from the City's Treasury and does not meet the Philadelphia Retirement Code's definition of "employee." She was certainly not an elected

---

9. We note that *In re Terlecki*, 935 A.2d 936 (Pa.Cmwlth., No. 74 C.D.2007, filed Nov. 20, 2007), an unreported opinion of this court, held that mail fraud and theft by deception were substantially the same because the crimes had similar *mens rea* and both crimes encompassed deceptive conduct and protected against theft and fraud. Similarly, in *Commonwealth v. Mascaro*, 260 Pa.Super. 420, 394 A.2d 998 (1978), the Superior Court held that it amounted to double jeopardy to try the defendant for theft by deception in state court when he had pled guilty to mail fraud in federal court. We are not bound by decisions of the Superior Court, and unreported opinions of our court are not precedential. In addition, the analysis of these cases was based upon the elements listed only in § 1341, and did not consider the elements of honest services fraud incorporated into § 1341 by § 1346.

10. Malfeasance encompasses a willful or corrupt breach of a legal duty by a person who has accepted public office. *Merlino v. Phila. Bd. of Pensions & Ret.*, 916 A.2d 1231, 1234 (Pa.Cmwlth.2007). Pursuant to the Ethics Act, Appellee had a statutory duty to disclose the payments.

official in any capacity. Because her conviction was not related to employment with the City, it cannot serve as a basis for disqualification under the Philadelphia Retirement Code.

For all of the foregoing reasons, we affirm.

## ORDER

AND NOW, this 7th day of January, 2014, the order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.