**[J-1-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| JOSEPH J. O'NEILL, | : | No. 25 EAP 2021 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court entered on |
| | : | October 19, 2020 at 1359 CD 2019 |
| v. | : | affirming the Order entered on |
| | : | September 3, 2019 by the |
| | : | Pennsylvania State Employees' |
| STATE EMPLOYEES' RETIREMENT | : | Retirement Board at No. 2016-06. |
| SYSTEM, | : | |
| | : | SUBMITTED: March 8, 2022 |
| Appellee | : | |

**OPINION**

**JUSTICE TODD**                                        **DECIDED: August 16, 2022**

Pennsylvania's Public Employee Pension Forfeiture Act ("Act 140")[1] mandates the

forfeiture of the pension of a public official or public employee when he or she is convicted

of certain Pennsylvania crimes related to public office or public employment, or is

convicted of federal offenses that are "substantially the same" as the forfeit-triggering

state crimes. 43 P.S. §§ 1312, 1313. We granted discretionary review to consider

whether a federal conviction for false statements to a federal agent, 18 U.S.C. § 1001

("Section 1001"), is "substantially the same" as the Pennsylvania crime of false reports to

law enforcement authorities, 18 Pa.C.S. § 4906 ("Section 4906"), for purposes of Act 140.

For the reasons that follow, we conclude that the two offenses are not "substantially the

---

[1] Act of July 8, 1978, P.L. 752, No. 140, 43 P.S. §§ 1311-1315.

same," and, thus, the Commonwealth Court erred in affirming the forfeiture of the pension of Appellant, former Municipal Court of Philadelphia County Judge Joseph O'Neill.[2]

Appellant became a member of the State Employees Retirement System ('SERS")[3] on November 14, 2007, by virtue of his commission as a judge on the Municipal Court of Philadelphia County. On March 11, 2016, Appellant was charged in the United States District Court for the Eastern District of Pennsylvania with two counts of making false statements to federal agents in violation of Section 1001, and was ultimately indicted for this offense. The indictment alleged that, on November 16, 2011, another judge on the municipal court, Judge Joseph Walters, Jr., telephoned Appellant and requested favorable treatment for a defendant, Samuel Kuttab, in a case scheduled to be heard by Appellant that afternoon. Specifically, it was alleged that Judge Walters asked Appellant to take a "hard look" at the case, and stated that Kuttab was "my guy." Stipulations of Fact of State Employees' Retirement Board, at 1. That same day, Appellant heard evidence presented in the case, and ruled in favor of Kuttab. *Id.*

Unbeknownst to Appellant or Judge Walters, the FBI was investigating the relationship between Judge Walters and Kuttab, a politically-active businessperson, and had placed a wiretap on their telephones. As part of the investigation, the FBI looked into the circumstances surrounding the conversation between Judge Walters and Appellant. FBI agents interviewed Appellant on September 19 and 20, 2012. During the first interview, the agents asked Appellant whether anyone contacted him in advance of the November 16, 2011 hearing to ask him to rule in any particular party's favor. *Id.* Appellant

---

[2] Subsequent to the events described below, Act 140 was amended to expand the list of Pennsylvania crimes that could trigger a pension forfeiture. *See* Act of March 28, 2019, P.L. 1, No. 1.

[3] SERS is the administrative arm of the State Employees' Retirement Board ("Board"). While this matter is captioned as *O'Neill v. SERS*, it is the Board's order that is under review.

denied any such contact and emphasized that he would have remembered if someone contacted him about the case. *Id.* In a second interview, when asked by FBI agents if, before the hearing, anyone told Appellant that the defendant at that hearing was his "friend," Appellant responded that it "did not happen." *Id.* Thereafter, on May 26, 2016, Appellant pled guilty to two counts of violating Section 1001 and resigned from his commission as a judge on the municipal court.

A week after his resignation from the municipal court, on June 3, 2016, Appellant submitted an application for annuity with SERS in which he sought an immediate lump sum payment of his pension. By letter dated June 16, 2016, SERS informed Appellant that, pursuant to Act 140, he had forfeited his pension benefit as of the date of his guilty plea to Section 1001, and that he was entitled only to the monies he contributed while a member of SERS, less any debts, fines, or restitution ordered at the time of sentencing. In its letter, SERS explained that, pursuant to Section 3(a) of Act 140:

> [N]o public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such a public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment. 43 P.S. § 1313(a).

SERS Letter, 6/16/16 at 1. SERS further explained that Section 2 of Act 140 defined the phrase "[c]rimes related to public office or public employment" to include, *inter alia*, Section 4906 of the Crimes Code, which criminalizes giving false reports to law enforcement, and any federal crime "substantially the same" as Section 4906. 43 P.S. § 1312.[4] Upon review of Appellant's record, SERS found that Appellant was a public official

---

[4] Section 1001, false statements to a federal agent, provides:

when he pled guilty to two counts of violating Section 1001, and that Section 1001 is "substantially the same" as Section 4906.  As such, SERS concluded that Appellant forfeited his pension benefit when he pled guilty to two counts of violating Section 1001.  Appellant appealed this determination to the Board.

---

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> > (1) falsifies, conceals, or covers up by trick, scheme, or device a material fact;
> >
> > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> >
> > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title [or] imprisoned ....

18 U.S.C. § 1001.  Section 4906, Pennsylvania's crime of false reports to law enforcement authorities, 18 Pa.C.S. § 4906, provides in relevant part:

> (a) Falsely incriminating another.--Except as provided in subsection (c), a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.
>
> (b) Fictitious reports.--Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:
>
> > (1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or
> >
> > (2) pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident.

18 Pa.C.S. § 4906.

Initially, the Board appointed a hearing officer for the development of a factual record; however, as Appellant and SERS found a hearing to be unnecessary, they submitted stipulations of fact, joint exhibits, and written briefs setting forth their respective arguments. Thereafter, the hearing officer issued a decision in which she determined that Appellant had been convicted of a crime related to public office or public employment, and that Section 1001 was substantially the same as Section 4906. In reaching this conclusion, the hearing officer found dispositive the Commonwealth Court's decision in *Merlino v. Philadelphia Board of Pensions and Retirement*, 916 A.2d 1231 (Pa. Cmwlth. 2007) (holding Section 1001 to be substantially the same as Section 4906 for purposes of Act 140). Accordingly, the hearing officer concluded that Appellant forfeited his pension benefit when he pled guilty to two counts of violating Section 1001 and recommended that the Board affirm SERS's forfeiture determination. Appellant filed exceptions to the hearing officer's recommendation with the Board.

Before the Board, Appellant argued, contrary to the Commonwealth Court's holding in *Merlino*, that Section 1001 is not substantially the same as Section 4906 because Section 4906 contains elements of proof that Section 1001 does not contain. Additionally, Appellant contended that *Merlino* was factually distinguishable and should not control his case. According to Appellant, when determining whether two crimes are substantially the same for purposes of Act 140, the facts of an underlying conviction should be considered in addition to a comparison of the elements, including the *mens rea,* of the crimes. Appellant claimed that his conduct, while a violation of Section 1001, did not violate Section 4906. As such, Appellant maintained that *Merlino* was factually distinguishable because the conduct of the individual in *Merlino* violated both Section 1001 and Section 4906.

The Board denied Appellant's exceptions and confirmed the forfeiture of his pension benefit, agreeing with the hearing officer that Section 1001 and Section 4906 are substantially the same for purposes of Act 140. *In re: Account of Joseph J. O'Neill*, Docket No. 2016-06 (SERB filed September 3, 2019). In rejecting Appellant's exceptions, the Board first found that Appellant was essentially arguing that "the elements of a federal crime must be identical" to one of the forfeiture-triggering state crimes listed in Act 140. *Id.* at 3. To the contrary, citing precedent from the Commonwealth Court, the Board concluded that two crimes need not contain identical elements of proof to be substantially the same for purposes of Act 140, but rather two crimes are substantially the same if they "prohibit the same *type* of behavior." *Id.* (emphasis original). The Board determined that Section 1001 and Section 4906 prohibit the same type of behavior — reporting false information to law enforcement — and, therefore, the two crimes at issue were substantially the same.

In so concluding, the Board rejected Appellant's assertion that the federal crime was not substantially the same as Section 4906 because the federal crime entailed denying to the FBI that he was contacted regarding the case before him, as opposed to reporting an event that did not actually occur as required by Section 4906. *Id.* Specifically, the Board reasoned that "the nature of [Appellant's] misrepresentation to law enforcement does not affect the analysis required to determine whether Act 140 applies" and, thus, "[t]he fact that [Appellant's] lie to the FBI involved his denial of impropriety as opposed to falsely stating that something happened is a distinction without a difference for purposes of determining whether the federal crime is substantially similar to an enumerated Act 140 crime." *Id.* at 3-4. The Board also rejected Appellant's exception in which he maintained that the hearing officer improperly failed to consider the facts underlying the offenses. The Board reasoned that Act 140 does not require that the facts

of a particular case be analyzed when determining whether two crimes are substantially the same. As such, the Board disagreed with Appellant's attempts to factually distinguish *Merlino*. While recognizing that our Court had not reviewed whether Section 1001 and Section 4906 are substantially the same for purposes of Act 140, the Board concluded that *Merlino* was controlling.[5] Accordingly, the Board denied Appellant's request to reverse the determination of SERS. Appellant appealed to the Commonwealth Court.

A three-judge panel of the Commonwealth Court unanimously affirmed in an unpublished decision. *O'Neill v. State Employees' Retirement System*, 2020 WL 6129169, 241 A.3d 117 (Pa. Cmwlth. 2020) (table). The court began its analysis by recognizing that the purpose of Act 140 is to deter criminal conduct in public employment by requiring a forfeiture of pension benefits to which a public official or public employee would otherwise be entitled. The court also recognized that pension forfeiture is not favored and, thus, that pension forfeiture statutes are to be strictly construed.

The court focused upon Section 2 of Act 140, which defines "[c]rimes related to public office or public employment" to include "all criminal offenses as set forth in Federal law ... *substantially the same* as the crimes enumerated herein," which include Section 4906. *O'Neill*, 2020 WL 6129169, at *6 (quoting 43 P.S. § 1312) (emphasis original). Noting that Act 140 does not define the phrase "substantially the same," the court observed that, in interpreting that phrase, it has compared the two crimes at issue, *i.e.*, their elements, including *mens rea*. *Id.* (citing *Roche v. State Employees' Retirement Board*, 731 A.2d 640 (Pa. Cmwlth. 1999)).

In that regard, the Commonwealth Court found *Merlino* to be dispositive. Therein, it held that Section 1001 and Section 4906 both required that a false statement be

---

[5] Appellant raised other exceptions before the Board with which the Board agreed, but which are not relevant to the issues before our Court.

knowingly made to law enforcement and that these statutes were "substantially the same" for purposes of Act 140. Additionally, the court noted that, in *Merlino*, it did not consider the underlying facts, but compared only the elements of the two crimes, including their required *mens rea*. *Id.* at \*8 (citing *Merlino*; *DiLacqua v. City of Philadelphia, Board of Pensions & Retirement*, 83 A.3d 302 (Pa. Cmwlth. 2014)).

Applying *Merlino*, the Commonwealth Court rejected Appellant's contention that the two statutory provisions needed to be, in essence, identical. Indeed, the court opined that Appellant's argument ignored the word "substantially," rendering it surplusage and contrary to the principle of statutory construction that courts must construe every statute, if possible, "to give effect to all of its provisions so that none are rendered mere surplusage." *Id.* at \*10. The Commonwealth Court found that the elements of proof, including the *mens rea*, of the two crimes need not be identical to be "substantially the same," but, rather, the two crimes need only "target the same behavior." *Id.* (citing *Scarantino v. Public School Employees' Retirement Board*, 68 A.3d 375 (Pa. Cmwlth. 2013)). As both statutes require a false statement be knowingly made to law enforcement authorities, the court determined that Section 1001 and Section 4906 were substantially the same for purposes of Act 140.

We granted allocatur to consider whether Section 1001 and Section 4906 are "substantially the same" for purposes of Act 140.[6] As Appellant raises a pure question of

---

[6] The issues, as set forth in our order granting allocatur, are mere sub-arguments of this primary issue:

> (1) Whether the Commonwealth Court erred in holding that [Appellant] forfeited his pension under the Public Employee Pension Forfeiture Act 140 by determining that the federal offense to which he pled guilty, 18 U.S.C. § 1001, was substantially the same as the Pennsylvania state offenses defined in 18 Pa.C.S. §§ 4906(a) and 4906(b)[.]

law involving statutory interpretation, our scope of review is plenary, and our standard of review is *de novo*. *Commonwealth v. Foster*, 214 A.3d 1240, 1247 (Pa. 2019); *Commonwealth v. McClintic*, 909 A.2d 1241, 1245 (Pa. 2006).

Emphasizing that Act 140 must be strictly construed, Appellant first argues before us that the individual elements of each crime must be considered in determining whether Section 1001 and Section 4906 are substantially the same. Specifically, Appellant compares the language of Section 1001 that broadly criminalizes the making of a knowingly false material statement to the government with Section 4906's more specific language criminalizing only certain false statements to law enforcement officers — specifically, those: (1) intending to implicate another; (2) regarding an offense or incident that did not occur; or (3) pretending to furnish information relating to an offense or incident when the speaker knows he has no information relating to such offense or incident. 18 Pa.C.S. § 4906(a), (b)(1) and (b)(2). While Section 1001 broadly criminalizes any false statement, including his statement to the FBI, Appellant argues Section 4906 does not criminalize the same communication — that is, it does not apply to an individual who merely denies committing a crime. Appellant's Brief at 13, 25-26. Therefore, Appellant submits that, based upon a comparison of their elements, the two statutes are not substantially the same. Related thereto, Appellant emphasizes that Section 4906

---

(2) Whether the Commonwealth Court erred when it relied upon unsound law in *Merlino v. Philadelphia Board of Pensions and Retirement*, 916 A.2d 1231 (Pa. [Cmwlth.] 2007) by failing to engage in the proper analysis to factually distinguish *Merlino*[.]

(3) Whether the Commonwealth Court erred when it failed to properly consider that this Honorable Court has not held that 18 U.S.C. § 1001 is substantially the same as 18 Pa.C.S. § 4906 when it declined to examine the underlying facts of [Appellant's] federal conviction[.]

*O'Neill v. State Employees' Retirement System*, 260 A.3d 80 (Pa. 2021) (order).

requires a false statement to a law enforcement officer, whereas Section 1001 more broadly criminalizes a false statement to any government agency, or even to a third-party governmental contractor, which, according to Appellant, demonstrates that the two statutes target different behavior. In sum, Appellant maintains that a federal crime cannot be "substantially the same" as a state crime under Act 140 if the federal offense does not contain an element specifically required to be proven to convict under the Pennsylvania crime, or if the state crime targets different behavior than the federal crime.

Additionally, Appellant contends that the Commonwealth Court's reliance upon *Merlino*, in which the court found the two statutes to be substantially the same, fails for the same reason, as Section 1001 does not require that a false statement be made to law enforcement. Appellant stresses that the facts underlying *Merlino* were significantly different from those *sub judice*, as the police officer in that decision falsified an investigative report under Section 4906 as part of a drug investigation to implicate a suspect and knew that the drug dog sniff at issue did not occur. Contrary to the facts in *Merlino*, Appellant emphasizes that the facts underlying his federal conviction make clear that his conduct would not constitute a crime under Section 4906. Appellant contends that he was merely untruthful to the FBI agents resulting in his conviction under Section 1001 and that he did not engage in the additional conduct necessary for a conviction under 4906. Thus, according to Appellant, these factual differences preclude the two statutes from being deemed substantially the same.

Appellee SERS counters that Section 1001 is "substantially the same" as the Pennsylvania forfeiture crime of false reports to law enforcement authorities in Section 4906. While not defined in Act 140, Appellee submits that the phrase has been interpreted in *Merlino*, as well as other Commonwealth Court decisions, including *Scarantino*, *supra* (focusing on the underlying behavior at issue and rejecting the

argument that the crimes must be essentially or fundamentally identical to the state crime). Appellee rejects Appellant's contention that the underlying facts of the individual's case are relevant, as determining whether certain facts support a conviction under Section 4906 would place courts in the role of a jury. Appellee points out that the purpose of Act 140 is to provide specific and meaningful consequences for public employees and officials who commit crimes through their public employment or office, and in doing so targets the type of behavior that would trigger forfeiture.

Emphasizing the Statutory Construction Act's dictate of giving effect to all of a statute's provisions, Appellee maintains that the word "substantially" must be given effect, and to accept that the statutes must be identical would subvert that mandate. Here, both Section 1001 and Section 4906 require a false statement knowingly made to law enforcement authorities, *i.e.*, at their heart, both statutes criminalize the act of lying to government authorities. Thus, Appellee eschews Appellant's argument that the proper analysis is to compare the statutes line-by-line and to apply them to the facts of the case as being unreasonable and inconsistent with legislative intent. Indeed, Appellee submits that Appellant's interpretation of the law completely disregards a public official's duty of faithful performance.

Appellee further submits that the lower tribunals appropriately relied upon *Merlino*. According to Appellee, the *Merlino* court correctly focused on the elements of the federal and state crimes, including the required *mens rea*, in holding that both Section 1001 and Section 4906 required a false statement knowingly made to law enforcement authorities, and, as a result, the two crimes were substantially the same. Indeed, because *Merlino* was so clear in this regard, Appellee in this matter initially moved to dismiss Appellant's appeal to the Board solely on that basis.[7]

---

[7] The Board denied this request.

Finally, Appellee maintains that the Commonwealth Court correctly declined to speculate that our Court would reject *Merlino* and properly followed that decision under principles of *stare decisis*. In doing so, Appellee asserts that re-assessing whether a federal crime is substantially the same as an Act 140 state crime on a case-by-case basis, by looking at the underlying facts, would "obliterate the evenhandedness, predictability, consistency, and certainty in the law that *stare decisis* provides," Appellee's Brief at 27, and would result in some officials forfeiting their pensions for committing a particular crime while allowing others to avoid forfeiture, despite committing essentially the same crime. Finally, and related thereto, Appellee points to the value of certainty for pension administrators in rendering evenhanded, predictable, and consistent determinations regarding pension forfeiture.

Before turning to the relevant legal analysis in determining whether Section 1001 and Section 4906 are "substantially the same," we believe it helpful to set forth some background regarding pension forfeiture under Act 140. The statute requires three elements to be satisfied for the forfeiture of a public pension. First, the individual must be a "public official" or a "public employee." 43 P.S. § 1312. Second, the individual must be convicted of, or plead guilty or no defense to, a forfeiture-triggering crime. *Id.* § 1313(a). Third, the crime must have been committed through the individual's public office or public employment, or committed when the public office or public employment placed the person in a position to commit the crime. *Id.* §§ 1312, 1313(a). Forfeiture-triggering crimes include all state crimes enumerated in *Id.* § 1312 — of which Section 4906 is one — and "all criminal offenses as set forth in Federal law . . . substantially the same as the crimes enumerated herein." *Id.* § 1312.

There is no dispute that Appellant met the first two elements for an Act 140 forfeiture: he was a public official and his criminal act of lying to FBI agents regarding his

*ex parte* conversation with Judge Walters was related to his public office. Thus, the only question before our Court is whether Appellant's conviction of the federal offense found at Section 1001 was "substantially the same" as the state forfeiture-trigger crime found at Section 4906.

Our interpretation of Act 140 and the phrase "substantially the same" is guided by the foundational principles set forth in the Statutory Construction Act, 1 Pa.C.S. §§ 1501 *et seq.*, which has as its paramount tenet that "[t]he object of our interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.* § 1921(a). As we have oft repeated, "[t]he General Assembly's intent is best expressed through the plain language of the statute." *Commonwealth v. Brown*, 981 A.2d 893, 897 (Pa. 2009); *Commonwealth v. McCoy*, 962 A.2d 1160, 1166 (Pa. 2009). Therefore, when the terms of a statute are clear and unambiguous, they will be given effect consistent with their plain and common meaning. 1 Pa.C.S. § 1921(b); *Commonwealth v. Kelley*, 801 A.2d 551, 554 (Pa. 2002). We ascertain the plain meaning of a statute by ascribing to its particular words and phrases the meaning which they have acquired through their common and approved usage, and in context. 1 Pa.C.S. § 1903. Only in instances where the words of a statute are not explicit, or are ambiguous, do we consider the construction factors enumerated in 1 Pa.C.S. § 1921(c). *McCoy*, 962 A.2d at 1166; *Commonwealth v. Fithian*, 961 A.2d 66, 74 (Pa. 2008); *see also* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Concomitant with these considerations, the Statutory Construction Act sets forth certain presumptions which are to be applied when ascertaining legislative intent. In particular, when interpreting a statutory provision, we must presume that the legislature does not intend a result that is unreasonable, absurd, or impossible of execution, 1

Pa.C.S. § 1922(1), and intends the entirety of the statute to be certain, *id.* § 1922(2). Additionally, our Court has stressed that pension forfeiture is disfavored in the law, and, thus, Act 140 must be strictly construed. *See Mazzo v. Board of Pensions and Retirement*, 611 A.2d 193, 196-97 (Pa. 1992); *see generally In re Fisher's Estate*, 276 A.2d 516, 519 (Pa. 1971).

Finally, we observe that the parties and lower tribunals did not have the benefit of our recent unanimous decision, authored by Justice Mundy, in *A.L. v. Pennsylvania State Police*, 274 A.3d 1228 (Pa. 2022), in which we analyzed a claim similar to the one Appellant presents herein. Our decision in *A.L.* sets forth the applicable analytical framework to be employed in this appeal. Therefore, an in-depth review of that decision is beneficial.

In *A.L.*, our Court confronted the question of whether the crime of sexual assault as defined under the Uniform Code of Military Justice was "comparable" to sexual assault as defined under the Pennsylvania Crimes Code, so as to require A.L. to register for life as a sex offender. A.L., while in the Navy, had intercourse with the adult victim when her ability to consent was impaired by alcohol. He was convicted of sexual assault under the Uniform Code of Military Justice, which defines the offense, in relevant part, as: "commit[ting] a sexual act upon another person when the other person is incapable of consenting . . . due to . . . impairment by any drug, intoxicant, or other similar substance, and that condition *is known or reasonably should be known* by the person[.]" *Id.* at 1230 (quoting 10 U.S.C. § 920(b)(3)(A)) (emphasis original)).

After his discharge from the Navy, A.L. relocated to Pennsylvania, where he registered as a sex offender under Megan's Law IV, also referred to as the Sexual Offender Registration and Notification Act ("SORNA"). 42 Pa.C.S. § 9799.13. As explained by our Court, SORNA sets forth a three-tier classification system appearing in

Subchapter H of the Sentencing Code to specify the duration of a sex offender's registration requirements. Each tier lists predicate offenses defined under Pennsylvania's Crimes Code, and each tier states that "comparable" military offenses are also included in that tier. *A.L.*, 274 A.3d at 1230.

The question before our Court was whether A.L.'s conviction under 10 U.S.C. § 920(b)(3)(A) was "comparable" to sexual assault as defined by 18 Pa.C.S. § 3124.1, and more specifically, whether, when comparing a military criminal offense to a Crimes Code offense, the reviewing agency — the Pennsylvania State Police ("PSP") — was required to ensure that all of the elements of the crimes, including their *mens rea*, were equivalent. As part of our analysis, we clarified the nomenclature regarding the two offenses. Specifically, the military criminal offense, *i.e.*, the out-of-state offense, was referred to as the "offense of conviction;" the Pennsylvania in-state offense was labeled the "reference offense." *A.L.*, 274 A.3d at 1232.

Our Court determined that, in gauging offense similarity or equivalency, the favored analysis has generally been accomplished by comparing the elements of the out-of-state offense with those of the in-state offense. If the elements are the same, or if the offense of conviction is narrower than the reference offense – meaning it captures a subset of the conduct of the reference offense – the two are comparable. If, however, the offense of conviction defines the crime in terms of alternative elements, the question becomes whether the offense of conviction was based on the same elements as defined under the Pennsylvania statute. *Id.* at 1233.

We explained that this approach of comparing offenses has been endorsed by the United States Supreme Court, often in the context of the Armed Career Criminal Act, 18 U.S.C. § 924, and, in surveying that jurisprudence, noted that, in certain circumstances, the Supreme Court compares the elements of the reference offense (referred to as the

"generic" crime) with the elements of the offense of conviction (referred to as the "predicate" offense, and usually the conviction at the state level) — a method referred to as the "categorical approach." *Id.* at 1234 (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). Under this approach, the sentencing court does not focus on the particular facts underlying the offense of conviction, as to do so could entail an "elaborate factfinding process" that would be impractical, including where the conviction was based on a guilty plea. *Id.* (citing *Taylor*, 495 U.S. at 601). We observed that the high Court articulated three reasons for choosing this approach: Congress made the sentence enhancement dependent on "convictions" not actions; any effort at fact-finding for sentencing purposes would be problematic under the Sixth Amendment; and "daunting" difficulties and inequities would arise from a sentencing court's effort at belated fact-finding based on aged documents, especially when their content is subject to interpretation. *Id.* (citing *Descamps v. United States*, 570 U.S. 254, 272 (2013)).

However, our Court also noted that the Supreme Court has consistently recognized that some state offenses are defined by a "divisible" statute, meaning the statute gives alternative elements, usually phrased in the disjunctive, that could make up the offense. *Id.* In such cases, the Court has approved what it calls the "modified categorical approach," allowing the sentencing court to "consult a limited class of documents" from the conviction record, such as indictments and jury instructions, to determine the alternative element, and, thus, the alternative crime, of which the defendant was previously found guilty. *Id.* (citing *Descamps*, 570 U.S. at 257). Assuming the sentencing court can, in fact, determine from that limited set of documents the specific alternative crime of which the defendant was convicted, the court "can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic

[reference] crime." *Id.* at 1235 (quoting *Descamps*, 570 U.S. at 257). Thus, under the United States Supreme Court's categorical approach, the act of comparing offenses focuses on the elements, rather than the facts, of a crime. Our Court embraced the categorical approach in *A.L.*, noting that SORNA registration was based upon prior convictions as opposed to prior actions, and any attempt by PSP to engage in fact-finding relative to the particular circumstances of the underlying offense (outside of reference to a limited set of documents in the conviction record) could result in the types of inequities identified by the Supreme Court, as well as *ad hoc* and inconsistent outcomes.

Particularly relevant for the appeal *sub judice*, the *A.L.* Court engaged in a statutory construction analysis in which we attempted to discern the "loose and subjective" term "comparable." *Id.* at 1236. In doing so, we pointed to the General Assembly's embrace of the concept of "similarity" in various legal arenas, including its use of the phrase "substantially the same" in the area of pension forfeiture:

> To express the concept of similarity in these arenas, the legislative body has used different adjectives such as "equivalent," "similar," "essentially similar," "comparable," and "substantially the same." *See* 18 Pa.C.S. § 6105(b) (encompassing "equivalent" offenses in relation to firearms possession); 75 Pa.C.S. § 1611(d) (including "similar" convictions relative to commercial driver's licenses); *id.* § 1611(h) (superseded) (referencing "essentially similar" offenses relative to commercial driver's licenses); 5 Pa.C.S. § 3304(c) (embracing "comparable" offenses as to athlete-agent certification); 75 Pa.C.S. § 3731(e)(1)(iii) (superseded) (referring to "equivalent" offenses for repeat-DUI sentencing); 42 Pa.C.S. § 9714(g) (defining crime of violence to subsume "equivalent" crimes under prior Pennsylvania law or in another jurisdiction); 43 P.S. § 1312 (basing pension forfeiture on "substantially the same" extra-jurisdictional offenses).

*Id.*

Noting that phrases such as "comparable" "equivalent," and "similar" are undefined, the *A.L.* Court turned to consider the word "comparable" and its "common and approved" usage. *Id.* (quoting 1 Pa.C.S. § 1903(a)). Finding the dictionary definitions of the term "comparable" to have a variety of possible meanings, we determined the word to be ambiguous, warranting consideration of certain of the factors set forth in the Statutory Construction Act. *Id.* at 1237. Specifically, our Court considered the occasion and necessity for this aspect of the statute, the mischief to be remedied, and the object to be attained. *See* 1 Pa.C.S. § 1921(c)(1), (3), (4). We found these to be straightforward: "to avoid any unfairness or harm to the public that would result if an offender were treated more leniently due to the fortuity that his or her prior conviction arose in a different jurisdiction." *A.L.*, 274 A.3d at 1237. Turning to other statutory construction factors, such as the consequences of a particular interpretation, 1 Pa.C.S. § 1921(c)(6), and the presumption that the General Assembly did not intend an unreasonable result, *see id.* § 1922(1), we considered the alternative of a loose comparison of offenses, but rejected this as allowing *ad hoc* comparisons which could result in the disparate treatment of similarly situated persons, and the potential that consideration of vague sentences could devolve into "guesswork and intuition" possibly running afoul of due process considerations. *A.L.*, 274 A.3d at 1237 (quoting *State v. Wetrich*, 412 P.3d 984, 991 (Kan. 2018)).

Thus, "to remove guesswork, inconsistency, and *ad hoc* agency decision-making, to promote the legislative focus on prior convictions rather than prior actions, and to foreclose the type of 'daunting' difficulties and potential unfairness" associated with the review of the underlying facts of the conviction, our Court in *A.L.* held that the categorical approach was to be applied in ascertaining whether a prior extra-jurisdictional offense is "comparable" or "equivalent" for purposes of SORNA. *Id.* at 1237-38. This categorical

approach looks at "all elements of the offenses being compared, including scienter." *Id.* at 1238. Ultimately, we determined that, because the military statute sets forth two crimes, with differing *mens rea*, and because it could not be determined which *mens rea* A.L. was found to have possessed, the military statute "criminalize[d] a broader swath of conduct" than the predicate Pennsylvania offense defined by the Crimes Code, and, thus, the military offense was not "comparable" to sexual assault under 18 Pa.C.S. § 3124.1 for purposes of SORNA. *A.L.*, 274 A.3d at 1239-40. We find that the analysis set forth in *A.L.* directly informs our analysis in the present appeal.

Consistent with the approach taken in *A.L.*, we first turn to the relevant language of Act 140. As noted above, Section 2 of Act 140 lists certain crimes that are "related to public office or public employment" and includes "all criminal offenses as set forth in Federal law . . . substantially the same as the crimes enumerated herein." 43 P.S. § 1312.

The phrase "substantially the same," the meaning of which is the sole issue before our Court, is not defined. Although not defined, this omission does not *ipso facto* render the phrase ambiguous. Rather, as noted above, the Statutory Construction Act instructs the judiciary to interpret terms according to their common and approved usage. 1 Pa.C.S. § 1903. To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions. *See, e.g., Bruno v. Erie Insurance Co.*, 106 A.3d 48, 75 (Pa. 2014) (offering that, in determining a term's meaning, it is proper to consult dictionaries); *Fogle v. Malvern Courts, Inc.,* 722 A.2d 680, 682 (Pa. 1999) (approving of use of dictionaries to determine common and approved usage of a term).

Dictionary definitions of the terms "substantially" and "same" as used in this context reveal a largely consistent meaning, including those from around 1978 when Act 140 was

enacted.[8]  For instance, Black's Law Dictionary defines the term "substantially" as "[e]ssentially; without material qualification; in the main; in substance; materially."  Black's Law Dictionary 1281 (5th Edition 1979).  Similarly, an on-line dictionary defines "substantially" as "in a basic or essential way; fundamentally."  Dictionary.com, *available at* https://www.dictionary.com/browse/substantially.  The Cambridge Dictionary defines the term as "to a large degree."  Cambridge Dictionary, *available at* https://dictionary.cambridge.org/us/dictionary/english/substantially.  Similarly, another dictionary provides its meaning as "very much; a lot."  Oxford Learners Dictionaries, *available* *at* https://www.oxfordlearnersdictionaries.com/us/definition/english/substantially.  Finally, the Britannica Dictionary defines "substantially" as both "very much: a lot" and "almost completely."  Britannica Dictionary, *available at* https://www.britannica.com/dictionary/substantially.

As to the meaning of the term "same," Webster's New Collegiate Dictionary defines the word as "resembling in every relevant respect" and "conforming in every respect – used with *as.*"  Webster's New Collegiate Dictionary 1014 (1980); *see also* Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/same.  Consistent therewith, dictionary.com defines "same" as "identical with what is about to be or has just been mentioned" and "being one or identical though having different names, aspects, etc."  Dictionary.com, *available at* https://www.dictionary.com/browse/same.

---

[8] In defining a statutory term, we strive to determine its meaning at the time the General Assembly enacted the legislation.  *See Wisconsin Central Ltd. v. United States,* 138 S.Ct. 2067, 2074 (2018).  "After all, if judges could freely invest old statutory terms with new meanings, this Court would risk amending legislation outside the 'single, finely wrought and exhaustively considered, procedure' the Constitution commands."  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 535 (2019) (citing *INS v. Chadha,* 462 U.S. 919 (1983)). Because of the consistent dictionary definitions of the terms "substantially" and "same" over the last 40 years, we have no such concerns in this matter.

Finally, the Cambridge Dictionary defines the word "same" as "exactly like another or each other." Cambridge Dictionary, *available at* https://dictionary.cambridge.org/us/dictionary/english/same.

Based upon the consistent usages described above, we find the phrase "substantially the same" to be unambiguous, and hold that it means identical or essentially identical. Additionally, as in *A.L.*, because forfeiture under Act 140 is premised on whether an individual has been convicted or pled guilty to certain crimes, and as any attempt by Appellee to engage in fact-finding relative to the particular circumstances of the underlying offenses could result in disparate treatment of similarly-situated individuals and decisions that rely on the availability of criminal records, we find the categorical approach's focus on the elements, rather than the facts, of a crime, to be the proper analysis under Act 140 — warranting a comparison solely of the elements of the offenses, including scienter. Thus, in order to find two offenses "substantially the same" for purposes of pension forfeiture, we must examine their elements and assess whether they are identical or essentially identical.[9]

With this analytical construct in hand, we turn to the crimes at issue in this matter, which we quote again for ease of discussion. Appellant was convicted of the federal crime of false statements to a federal agent, 18 U.S.C. § 1001. Section 1001 provides in relevant part:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
>
> > (1) falsifies, conceals, or covers up by trick, scheme, or device a material fact;

---

[9] Such an interpretation is also consistent with the principle that pension forfeiture is disfavored in the law, and, thus, that Act 140 must be strictly construed. *See Mazzo*, 611 A.2d at 196-97; *see generally In re Fisher's Estate*, 276 A.2d at 519.

> > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title [or] imprisoned ....

*Id.*

Section 4906, Pennsylvania's crime of false reports to law enforcement authorities, 18 Pa.C.S. § 4906, provides in relevant part:

> > (a) Falsely incriminating another.--Except as provided in subsection (c), a person who knowingly gives false information to any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.
>
> > (b) Fictitious reports.--Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:
>
> > > (1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or
>
> > > (2) pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident.

*Id.*

As is plain from a review of the two crimes, the elements are not identical or essentially identical. Indeed, Section 1001 is much broader than Section 4906. Section 4906 sets forth, in essence, three distinct crimes that include elements that are not required for a conviction under Section 1001: knowingly giving false information to a law enforcement officer with intent to implicate another; reporting to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or furnishing law enforcement with information relating to an offense or incident when the individual knows he has no information relating to such offense or incident. 18 Pa.C.S. §

4906 (a), (b)(1), and (b)(2). While Section 1001 broadly criminalizes any false statement given to government authorities, such as Appellant's denial of criminal conduct to the FBI, Section 4906 does not apply to an individual who merely makes a false statement or denies committing a crime; rather, it requires a falsehood *and something more*: an intent to implicate another; or contrived knowledge about a crime or incident. This being the case, the two offenses are not identical or essentially identical, and, thus, Appellant's guilty plea to Section 1001 did not trigger pension forfeiture under Act 140. The lower court erred in concluding otherwise.

We must address one other aspect of the Commonwealth Court's analysis. In relying on *Merlino* and its progeny, the court correctly explained that a forfeiture analysis under Act 140 required a comparison of the elements, including scienter, of the crimes at issue. *O'Neill*, 2020 WL 6129169, at *6-8; *Merlino*, 916 A.2d at 1236. However, in engaging in such an analysis, the Court also considered, more broadly, whether the offenses targeted the same behavior. *See O'Neill*, 2020 WL 6129169, at *10 ("two crimes are substantially the same if the two crimes 'target the same behavior'"). To the extent lower court decisions have deviated from a comparison of the elements, including scienter, of the offenses at issue to determine if they are "substantially the same," we hereby disapprove such analysis.

Accordingly, for all these reasons, we reverse the order of the Commonwealth Court finding Section 1001 and Section 4906 to be "substantially the same."

Order reversed. Jurisdiction relinquished.

Chief Justice Baer and Justices Donohue, Dougherty, Wecht, Mundy and Brobson join the opinion.